IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CALIBER HOME LOANS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-2298-M |
| | § | |
| LEE COVE and CARDINAL | § | |
| FINANCIAL COMPANY, LP, | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

Defendant Cardinal Financial Company LP has filed a Motion to Compel or Strike Interrogatory Responses. See Dkt. No. 79.

Cardinal asks the Court for (1) an order compelling Plaintiff Caliber Home Loans, Inc. to "supplement its response to Interrogatory No. 8 to identify with specificity the information it claims as a trade secret" and to "distinguish its claimed trade secret information from what is merely confidential information, and information that Caliber acknowledges is available to the public or otherwise readily ascertainable" and (2) for an order "that the broad categories of information that Caliber claims as its trade secrets, including 'employee compensation information,' 'employee performance information,' 'special skills,' 'production,' 'customer pipeline information,' 'customer information,' 'contact information,' 'financial information,' and 'borrowing needs' be stricken to the extent that Caliber does not disclose a more

-1-

detailed description of a trade secret." Dkt. No. 79-1 at 1-2; *accord* Dkt. No. 79 at 14-15 of 16.

Caliber filed a response, *see* Dkt. No. 91, and Cardinal filed a reply, *see* Dkt. No. 102.

For the reasons below, the Court denies Cardinal's Motion to Compel or Strike Interrogatory Responses [Dkt. No. 79].

**Background**

Cardinal asserts that "Caliber's central claim is misappropriation of trade secrets, but Caliber refuses to identify its trade secrets with reasonable particularity"; that, "[w]ithout a clearly identified trade secret, there is no cause of action for misappropriation"; and that, "[a]s the parties prepare to depose Caliber's corporate representative, it is essential that Caliber immediately identify, with reasonable specificity the information that it alleges is protected as a trade secret by the Defend Trade Secrets Act ('DTSA'), or the Texas Uniform Trade Secret Act ('TUTSA')." Dkt. No. 79 at 5 of 16.

Cardinal reports that it "served its first set of interrogatories on Caliber on December 15, 2023, asking Caliber to identify the trade secrets it alleges that Cardinal misappropriated," specifically through Interrogatory Nos. 8, 9, 11, 12, and 13. Dkt. No. 79 at 6 & n.1 of 16. Those interrogatories asked the following of Caliber:

- **INTERROGATORY NO. 8:** Identify all Confidential Information and Trade Secrets that You allege Cardinal wrongfully obtained and/or

   misappropriated.
- **INTERROGATORY NO. 9:** Describe in detail the damages, including the method for calculating such damages, allegedly suffered by Caliber as a result of the alleged misappropriation/conversion of trade secrets and/or confidential business information as set forth as Count III of the Second Amended Complaint.
- **INTERROGATORY NO. 11:** For the damages identified by You in response to Interrogatory No. 9, identify what portion of said damages are directly attributable to Cardinal. Provide a detailed analysis of how you arrived at this conclusion.
- **INTERROGATORY NO. 12:** For every trade secret identified in response to Interrogatory No. 8, state the independent economic value of each alleged Trade Secret.
- **INTERROGATORY NO. 13:** For every trade secret identified in response to Interrogatory No. 8, describe in detail each effort Caliber has undertaken to maintain the secrecy of each alleged Trade Secret.

Cardinal contends that "Caliber served its responses to the interrogatories on January 22, 2024" and that "[t]hese responses were deficient" because "Caliber failed to identify, with reasonable particularity, the trade secrets that it alleges Cardinal misappropriated." Dkt. No. 79 at 6 of 16.

Cardinal explains that the parties conferred on March 7, 2024 and that "Caliber provided a supplemental response on March 19, 2024," but, according to Cardinal, "the supplement failed to identify the specific information claimed as trade secrets, failed to differentiate the claimed trade secrets from claimed 'confidential information' or from information in the public domain." Dkt. No. 79 at 6-7 of 16 (footnote omitted).

Cardinal contends that, "[i]n its supplemental response to Interrogatory No. 8, Caliber describes all its allegedly proprietary information as 'Confidential

Information and/or Trade Secrets'" and that "Caliber makes this non-distinction throughout its response, never taking a position on what it is alleging as a trade secret, and what it merely claims as confidential." Dkt. No. 79 at 7 of 16 (footnote omitted). And Cardinal reports that "Caliber then points to several general categories of 'secret' information without disclosing any specific information that allegedly qualifies as a trade secret" and without tying "any of those categories of information directly to any specific information or documents." *Id.*

Cardinal also complains that "Caliber has identified five documents it claims contain Caliber's trade secrets but did not identify what information in those documents is supposedly a trade secret" and instead "claims that each of those documents contains 'Confidential Information and/or Trade Secrets' and that each is 'a compilation of various confidential, proprietary, and nonpublic data that Caliber created and uses in its business and were protected under Confidentiality and non-Solicitation Agreements signed by employees.'" Dkt. No. 79 at 7-8 of 16 (footnote omitted). And, according to Cardinal, "Caliber does not identify what information in these documents is merely confidential, what information it claims as trade secrets, and what it admits is in the public domain." *Id.* at 8 of 16.

Caliber responds that:

- "The only issue before the Court appears to be whether [Caliber] has provided a full and complete answer to Interrogatory No. 8";
- "Cardinal's Motion to Compel should be denied because the answer is 'yes:' Caliber has answered – fully, completely, specifically, and without

-4-

reservation" – where "Caliber's answer precisely identifies, by name and Bates label, five computer files (Excel spreadsheets) taken by Defendant Lee Cove," and "Caliber produced the exact files too";

- "With no real basis for complaining that Caliber has failed to answer, Cardinal now demands a baffling array of information that was not requested as part of Interrogatory No. 8";
- "Contrary to Cardinal's argument, the legal merits of whether any information might be a 'trade secret' is irrelevant to the issue of whether the same information has, in fact, been identified in the response";
- "Contrary to Cardinal's tortured framing of the issue, 'misappropriation of trade secrets' is not the central issue in the case, but rather that Cove's misconduct with or on behalf of Cardinal *included* misappropriation of confidential information and trade secrets, an unlawful means of accomplishing their goal of raiding Caliber's workforce and, by extension, its source of business";
- "Thus, under the [TUTSA] and the federal [DTSA], whether any isolated piece of data found within a spreadsheet would independently constitute a 'trade secret' is beside the point because the allegation is that *all of the data* was improperly taken, not just some component parts of the spreadsheets" and that "[t]he documents did not belong to Cardinal" and that "Cardinal was not allowed to use them (irrespective of whether any given data point might, arguably, have been identifiable externally)" – and, according to Caliber, "[f]or identification, that is sufficient"; and
- "Cardinal has come nowhere close to showing any entitlement to discovery sanctions under Rule 37(b), such as an order 'striking' any material."

Dkt. No. 91 at 4-5 of 15 (cleaned up).

Cardinal replies that:

- "Through this Motion to Compel, Cardinal asks a simple question, which it has posed time and time again, in interrogatories, correspondence, and meetings: 'What are the trade secrets that Caliber claims Cardinal stole?' Caliber asserts trade secret claims under the DTSA and TUTSA but refuses to answer this fundamental question."
- "Caliber's response to interrogatories and to this motion either misunderstands or ignores what it means to identify its trade secrets";

- "Cardinal is not asking to expand its interrogatory; it is seeking the information that it has requested that Caliber since the beginning of this case. Cardinal must know what Caliber trade secrets it alleges are at issue in this case so that Cardinal can defend its position at trial."
- "The DTSA and TUTSA protect only trade secrets – not confidential information, and not information that is publicly available. The only information that will be at issue at trial for Defendant Cardinal as to Count II of the Complaint is the misappropriation of trade secrets. Caliber has yet to say what those trade secrets are."
- "Cardinal's Interrogatory No. 8 asks Caliber to identify its trade secrets, but other interrogatories served by Cardinal build on that information. For example, Interrogatory No. 9 asks Caliber to describe the damages suffered because of the alleged misappropriation of trade secrets – which requires Caliber to identify the trade secrets that allegedly caused the damage, and Interrogatory No. 12 asks Caliber to identify the independent economic value of each trade secret identified in Interrogatory No. 8. Caliber's identification of its trade secrets in Interrogatory No. 8 will necessitate that it supplements Interrogatory Nos. 9, 11, 12, and 13, as well."

Dkt. No. 102 at 4-5 of 15 (cleaned up).

Cardinal asserts that "[t]he central question here is whether Caliber has identified the trade secrets it has brought suit against Cardinal to enforce" and that "Caliber has not done so and it must." *Id.* at 5 of 15.

## Legal Standards and Analysis

That may or may not be so depending on what Cardinal asked and how Caliber answered – at least insofar as Cardinal is moving under Federal Rules of Civil Procedure 37(a)(3)(B)(iii) and 37(a)(4) to compel Caliber to further supplement its answer to Interrogatory No. 8.

But Cardinal also asks the Court to strike parts of Caliber's answer to

Cardinal's Interrogatory No. 8 "to the extent that Caliber does not disclose a more detailed description of a trade secret within one or more" of "the broad categories of information that Caliber claims as its trade secrets." Dkt. No. 79 at 14-15 of 16. The Court first turns this second request.

## I.   There is no basis to "strike" any interrogatory answers.

Citing Federal Rules of Civil Procedure 26(e) and 37(b)(2) and another court's decision applying Federal Rules of Civil Procedure 37(c)(1), Cardinal asserts that, "[w]here a party fails to supplement a deficient answer to an interrogatory, one remedy that the Court may elect to use is to strike the response." Dkt. No. 79 at 11 of 16 (citing *iFLY Holdings LLC v. Indoor Skydiving Germany GmbH*, No. 2:14-cv-01080-JRG-RSP, 2016 WL 3854070, at *2 (E.D. Tex. Mar. 22, 2016)). And Cardinal asserts that "an 'evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond,' and the Court is authorized to strike answers that meet these criteria." *Id.* (quoting FED. R. CIV. P. 37(a)(4)).

Then, in reply, Cardinal contends that, "[i]n its response to Interrogatory No. 8, Caliber identifies several general categories of information, specifically 'employee compensation information, employee performance information, special skills, production, [and] customer pipeline information'"; that, "[i]n its response to Cardinal's Motion, Caliber seems to argue that this language is purely introductory";

that, "[i[f this is an accurate characterization, Caliber should have no reason to oppose striking this language from the response"; and that, "[i]f it is an inaccurate characterization, and Caliber intends to rely on those disclosures at trial, this language must be struck from the response, because it identifies only general categories of information not sufficiently specific to meet the intrinsic burdens of the DTSA and TUTSA." Dkt. No. 102 at 9 of 12 (cleaned up; citing *StoneEagle Servs., Inc. v. Gillman*, No. 3:11-cv-2408-P, 2013 WL 12124328, at *3 (N.D. Tex. Aug. 19, 2013)).

But the Court can find no legal basis for the relief that Cardinal seeks.

The Federal Rules of Civil Procedure, including Rules 37(a)(3) and 37(a)(4), do not provide a basis for the Court to strike a discovery response or answer based on the types of deficiencies that Cardinal alleges in Caliber's interrogatory answer

The Federal Rules do authorize or require striking discovery responses or answers under limited circumstances. Specifically, Federal Rule of Civil Procedure 26(g)(2) provides that "[o]ther parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention." FED. R. CIV. P. 26(g)(2). But being unsigned is not among the charges that Cardinal raises against Caliber's interrogatory answers.

And Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike

-8-

from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). But Rule 12(f) "only applies to pleadings," and Federal Rule of Civil Procedure "7(a) provides a list of permitted 'pleadings' that determines what constitutes a pleading that is subject to being stricken under Rule 12(f)." *Skinner Cap. LLC v. Arbor E&T, LLC*, No. 3:23-cv-2320-D, 2024 WL 1219235, at *5 (N.D. Tex. Mar. 21, 2024). That list does not include discovery responses and answers, which therefore "are not subject to a motion to strike" under Rule 12(f). *McMillan v. Fulton Cnty., Ga.*, No. 1:06-CV-2324-JTC-JFK, 2007 WL 9717224, at *1 (N.D. Ga. Oct. 31, 2007).

Neither has Cardinal shown any basis for relief in the form of sanctions under Federal Rules of Civil Procedure 37(b)(2) and Rule 37(c)(1).

Federal Rule of Civil Procedure 37(b)(2)(A) provides that, "[i]f a party ... fails to obey an order to provide or permit discovery, including an order under [Federal Rule of Civil Procedure] 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or

> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."

FED. R. CIV. P. 37(b)(2)(A)(i)-(vii). Rule 37(b)(2) "empowers the courts to impose sanctions for failures to obey discovery orders." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (cleaned up).

Even if "striking" a discovery response or answer is among the sanctions that a court can impose under Rule 37(b)(2), Cardinal does not allege, and has not shown, that Caliber has violated any previously-entered discovery order in this case. And, insofar as Cardinal may hope for an order compelling a supplemental interrogatory answer and may be asking for Rule 37(b)(2) sanctions if Caliber fails to comply, Cardinal's request to strike is premature.

As to a party's supplementation obligations, Federal Rule of Civil Procedure 26(e)(1) provides that "[a] party ... who has responded to an interrogatory ... must supplement or correct its ... response: (A) in a timely manner if the party learns that in some material respect the ... response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." FED. R. CIV. P. 26(e)(1); *accord Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 361 (5th Cir. 2018).

Federal Rule of Civil Procedure 37(c)(1), in turn, provides that, "[i]f a party fails to provide information ... as required by ... [Rule 26(e)(1)], the party is not

-10-

allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless," and that, "[i]n addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in [Federal Rule of Civil Procedure] 37(b)(2)(A)(i)-(vi)." FED. R. CIV. P. 37(c)(1); *accord Olivarez v. Geo Group, Inc.*, 844 F.3d 200, 203 (5th Cir. 2016).

Cardinal is asking the Court to now order Caliber to further supplement its answer to Interrogatory No. 8 – over Caliber's objection that no supplementation is required – and suggesting that "Caliber's identification of its trade secrets in Interrogatory No. 8 will necessitate that it supplements Interrogatory Nos. 9, 11, 12, and 13." Dkt. No. 102 at 5 of 12. But any request for Rule 37(c)(1) sanctions – assuming that, if granted, the sanctions could include "striking" portions of an interrogatory answer – is also, at best, premature.

Absent a legal basis for the requested relief, the Court denies Cardinal's request to strike parts of Caliber's answer or supplemental answer to Cardinal's Interrogatory No. 8.

## II. Caliber sufficiently answered Interrogatory No. 8 as worded.

Turning to Cardinal's request for an order compelling Caliber to further

-11-

supplement its answer to Interrogatory No. 8, Federal Rule of Civil Procedure 37(a)(3)(B) provides that "[a] party seeking discovery may move for an order compelling an answer …. if: … (iii) a party fails to answer an interrogatory submitted under [Federal Rule of Civil Procedure] 33." FED. R. CIV. P. 37(a)(3)(B)(iii).

For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

And Federal Rule of Civil Procedure 33(a)(2) provides that "[a]n interrogatory may relate to any matter that may be inquired into under [Federal Rule of Civil Procedure] 26(b)." FED. R. CIV. P. 33(a)(2). "Generally, an interrogatory may relate to any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 579-80 (N.D. Tex. 2018) (cleaned up).

In response to interrogatories under Rule 33, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath," and "[t]he grounds for objecting to an interrogatory must be stated with specificity." FED. R. CIV. P. 33(b)(3)-(4).

Federal Rule of Civil Procedure 33(d) further provides that, "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored

information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." FED. R. CIV. P. 33(d).

And, so, "in relying on Rule 33(d) in an interrogatory answer, an answering party must specify the information that the requesting party should review in sufficient detail to enable the requesting party to locate and identify the information in the documents at least as readily as an answering party could. This generally requires an answering party to point to specific documents, by name or bates number, and not pointing the requesting party generally to document productions." *Lopez*, 327 F.R.D. at 580 (cleaned up).

As to the sufficiency of an interrogatory answer, "as the Fifth Circuit has observed, [d]iscovery by interrogatory requires candor in responding.... The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. Where an interrogatory answer as a whole discloses a conscientious endeavor to understand the question and to answer fully that question, a party's obligation under Rule 33 is satisfied." *Id.* (cleaned up).

An answering party "is not required to make an extensive investigation in responding to an interrogatory, but he must pull together a verified answer by reviewing all sources of responsive information reasonably available to him and providing the responsive, relevant facts reasonably available to him." *Id.* (cleaned up).

Cardinal asks the Court to compel Caliber to further supplement its answer to Interrogatory No. 8 to identify with specificity the information that Caliber claims as a trade secret and to distinguish its claimed trade secret information from what is merely confidential information and from information that Caliber acknowledges is available to the public or otherwise readily ascertainable.

As it stands, Caliber's supplemental answer to Interrogatory No. 8 provides:

> **INTERROGATORY NO. 8**: Identify all Confidential Information and Trade Secrets that You allege Cardinal wrongfully obtained and/or misappropriated.
> **ANSWER:** Caliber objects to Interrogatory No. 8 because it is overly broad, vague, and unduly burdensome. Based on the foregoing objections, Caliber will describe, with as much specificity as possible, the Confidential Information and/or Trade Secrets believed to have been taken by Cardinal's employees, agents and representatives, as follows:
>> Cardinal and Former Caliber Employees wrongfully used or disclosed Caliber's confidential information and trade secrets. Caliber entrusted the Former Caliber Employees with extensive non-public confidential information regarding its employees (e.g., employee compensation information, employee performance information, special skills, production, customer pipeline information, etc.) and such persons executed enforceable agreements prohibiting the unauthorized use or disclosure of such information. The Former Caliber Employees used this information to directly and indirectly target other Caliber

employees and solicit those employees to leave Caliber and join Cardinal. Caliber also contends that the Former Caliber Employees shared that information with Cardinal so that it could, among other things, formulate offers of employment, including financial terms, without ever negotiating with the individual employees.

On July 18, 2022, via blind copy to his personal email (leeacove@gmail.com), Cove sent himself documents entitled (1) "Lee Cove- 2022 YTD Compensation as of 06.30.22 with cove_v1_07.15.22.xlsx" and (2) "Lee Cove – 2021 YTD Compensation _As of 12.31.21 with cove_v1_07.15.22.xlsx", which are "Wage Detail Reports" that contain complete compensation information for nearly 400 Caliber employees for 2021 and 2022. On Sunday October 2, 2022—the day before he resigned—Cove sent these same reports to his executive assistant. See Bates Nos. Caliber_Cove 019093-95; 023374-79. The spreadsheets represent Confidential Information and Trade Secrets and they contain a compilation of information, including, *inter alia*, Caliber employee names, their job titles, office locations, YTD wages, regular earnings, overtime earnings, advances received, various bonuses received, overrides, commissions, incentives received, holiday pay received, pay received during any medical, maternity, or military leave, pay received for taking time off to vote, etc.

Cove also directed his executive assistant to send him extensive confidential and proprietary information regarding Caliber's branch offices and loan originators in the Southeast Division:

- On September 27, 2022, Cove sent his executive assistant a summary of branch volume and profitability information accompanied by a note saying, "We need to check how many are ours but call me first to discuss." See Bates Nos. Caliber_Cove 027769. The branch volume and profitability summaries represent Confidential Information and they contain Confidential Information and/or Trade Secrets.
- On September 28, 2022, Cove had his executive assistant send him a document entitled "Total Volume by LC.xlsx" that contains vast amounts of Confidential Information and/or Trade Secrets related to the Southeast Division and its personnel. One tab of the Excel file contains 23,095 lines of production information on loans closed in the Southeast Division in 2021 and through August 31, 2022. A second tab in the Excel file contains vast amounts of Confidential Information and/or Trade Secrets about the production in 2021 and 2022 (e.g., units, volume, margin, fee

- revenue, loan type, concessions) for more than 350 loan consultants in the Southeast Division. <u>See</u> Bates Nos. Caliber_Cove 027547-27766. This document contains a highly confidential, proprietary, and non-public compilation of data regarding over 23,000 loans that originated at Caliber, including but not limited to, the loan originator, Caliber loan numbers, loan amounts, loan type, total concessions on each loan, the net margin on the loan, the amount of fee revenue generated by the loan, and the overall margin amount.

- Separately on September 28, 2022, Cove had his executive assistant send him a document entitled "MidSouth & South Volume by LC rv.xlsx" that contains the unit and volume information, broken down by applications and funding, for over 100 loan consultants in those Regions through September 27, 2022. <u>See</u> Bates Nos. Caliber_Cove 027767-68. This spreadsheet represents Confidential Information and contains data that comprise Confidential Information and/or Trade Secrets. It contains a compilation of data regarding loan application and funding data for loan originators in Caliber's MidSouth and South regions for 2022 year-to-date through September 27, 2022, including but not limited to, the loan originator's name, Caliber branch location, then-current employment status, units, loan application volume, and volume of loans actually funded by Caliber.

Each of the aforementioned documents (i.e., "Lee Cove- 2022 YTD Compensation as of 06.30.22 with cove_v1_07.15.22.xlsx", "Lee Cove – 2021 YTD Compensation_As of 12.31.21 with cove_v1_07.15.22.xlsz", "Total Volume by LC.xlsx", and "MidSouth & South Volume by LC rv.xlsx") are a compilation of various confidential, proprietary, and nonpublic data that Caliber created and uses in its business and were protected under Confidentiality and Non-Solicitation Agreements signed by employees.

Finally, Caliber contends that the Former Caliber Employees diverted loans from Caliber to Cardinal and used confidential and trade secret customer information (e.g., contact information, financial information, borrowing needs) to facilitate this activity, including Cardinal's use of a "Transition Loan Team" established for this purpose.

Dkt. No. 82 at 14-17 of 83.

In response to Cardinal's request to compel a further supplemental answer, Caliber asserts that it provided an extensive supplemental answer to Interrogatory No. 8 but that Cardinal nevertheless "complains that Caliber 'refuses to identify its trade secrets with reasonable particularity,' apparently because the answer does not discuss each line item, row, column, or cell within the directly identified spreadsheets and Caliber does not expound upon the content of the documents to differentiate between what data is 'confidential' or 'available to the public,' and whether some internal content of each spreadsheet should variously be characterized as a 'trade secret,' 'confidential information,' or both." Dkt. No. 91 at 7-8 of 15. According to Caliber, "[n]one of that was requested and none of that is needed to answer the discovery request." *Id.* at 8 of 15.

The Court agrees.

As another court has explained, "[i]n reviewing a claim that an answer to an interrogatory is not responsive or is incomplete, the initial focus is on the question, not the answer, for on the question you ask depends the answer you get." *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-CV-01644-REB-CBS, 2010 WL 502721, at *24 (D. Colo. Feb. 8, 2010) (cleaned up). "Putting the wrong question is not likely to beget right answers even in law," and, "consequently, [an answering party] is only obligated to answer the questions that were asked, and [is] not required to guess that information beyond that which was specified was being sought," but rather "is

entitled to answer a poorly phrased interrogatory as it was drafted." *Id.* (cleaned up).

Caliber contends that Cardinal's Interrogatory No. 8 did not ask for a distinction between "confidential information" and "trade secrets" to be drawn but rather "lumped the two categories together as 'Confidential Information and Trade Secrets.'" Dkt. No. 91 at 10 of 15. And Caliber asserts that Interrogatory No. 8 as worded – directing Caliber to "[i]dentify all Confidential Information and Trade Secrets that You allege Cardinal wrongfully obtained and/or misappropriated" – does not ask Caliber to:

- "identify what information in these documents [5 spreadsheets] is merely confidential, what information [Caliber] claims as trade secrets, and what it admits is in the public domain";
- "identify its trade secrets with sufficient specificity to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade";
- "identify the specific characteristics of each trade secret, such as a particular drawing, process, procedure or cost/pricing data";
- "identify each claimed trade secret in a manner that distinguishes it from information that is publicly accessible or readily ascertainable";
- "provide a specific description of why the combination is unique, how the information is combined, and how it operates in that unique combination";
- "specifically identify any documents or other source containing this information (whether about former employees or potential customers)";
- "indicate which information within these spreadsheets is not publicly available and that it alleges is a trade secret"; or
- "disclose what it is about its spreadsheets that is not publicly available or ascertainable, and why combining that information with public information like employee names and loan volume creates a new trade secret."

Dkt. No. 91 at 9 of 15.

The Court agrees with Caliber's assessment.

Cardinal's motion and reply discuss why Cardinal needs Caliber to specifically identify the trade secrets at issue and to distinguish them from what is only confidential information that, according to Cardinal, cannot be the subject of Caliber's claim under the TUTSA and the federal DTSA. And, faced with different discovery requests or motions, the Court has ordered a party to specifically identify the trade secrets at issue in its case. *See StoneEagle Servs., Inc. v. Valentine*, No. 3:12-cv-1687-P, 2013 WL 9554563 (N.D. Tex. June 5, 2013).

But, on the Court's review, Caliber has sufficiently answered what Interrogatory No. 8 asks under the governing legal standards laid out above.

So, for the reasons that Caliber persuasively explained in its response, the Court finds no basis to require Caliber to further supplement its answer to Interrogatory No. 8.

Finally, the Court determines that, under Federal Rule of Civil 37(a)(5), considering all of the circumstances here and the Court's ruling, the parties will bear their own expenses, including attorneys' fees, in connection with this motion.

**Conclusion**

The Court denies Defendant Cardinal Financial Company LP's Motion to Compel or Strike Interrogatory Responses [Dkt. No. 79].

SO ORDERED.

DATED: May 7, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE